Case number 25-5468, USA v. Michael Fletcher, oral argument, 15 minutes per side, Mr. Eakes for the appellant. Good afternoon, Your Honors. Eric Eckes on behalf of Dr. Fletcher who appears today with me. Your Honors, the state have two insurmountable realities to uphold this conviction. The district court was required to do a, quote, renewed inquiry into the FREDA warnings and the FREDA rights for Dr. Fletcher. At the trial court level or at the district court level, the government had been arguing that this was what I would call a second thoughts case where, which is the Modena case law where you have a defendant from jail write a letter, say I want to represent myself, and then three days later, vice versa. After a FREDA hearing, three days later, writes a letter and says, changing my mind, but then goes back. This isn't that case. This is not Modena. This is McBride where McBride says when there is a change in circumstance or an explicit revocation of the right to represent yourself, then you need a new inquiry. What was the explicit revocation? Retaining counsel. He retained counsel. Counsel entered an appearance. Counsel was there for, I believe, a hearing, if I'm not wrong, before the conflict hearing, but counsel certainly entered an appearance. I mean, that was. You're correct that it's actually there, but it was fairly short, about three weeks. It was fairly short, but the length of period where what Dr. Fletcher did is he wrote a letter to the court asking for CJA counsel, and in the process of onboarding CJA counsel, the court can probably guess how I know about that, there was this entry of appearance or the statement that Alan Statman was going to be entering the case. So then the court had somebody who was represented, and we go through this conflict hearing where Mr. Statman is suddenly jumping off the case after saying to the government that he did not have a conflict, and you have Dr. Fletcher make this very abrupt, impulsive decision in the midst of the conflict consideration that, okay, I'll just represent myself. And then the district court's response to that was, if that's what you want to do. I just want to be clear on what you said about a hearing with Statman. I'm looking at page three of your brief, which as I read it, says, Fletcher retained Statman. The government responded by arguing Statman's representation created conflict. Statman filed a response requesting permission to withdraw. So I didn't see anything here about any other hearing before the conflict hearing. Was there something I missed? I'm trying to remember back, because it was at, I know there was a hearing where Alan Statman did not show up, and Judge Bunning, because I'm recalling this and reading the transcript, said he needs to be here the next time. And that's when he entered the hearing. That's not that he did something, it was that he didn't do something. Right. All right, that's fine. I just was taking your own sequence here and wanted to make sure I had it right. Okay. Yeah. I mean, Alan Statman did not do anything major in the case other than come and fold in front of the court and say, I think I need to get out of this. Well, the government had raised it. It wasn't that Statman just woke up one morning and decided to bail. The government had raised this as an issue, which he then had to tell the truth about. Correct. And then, but, but I just pause at Alan Statman's veracity, based on other things in this case. So McBride is clear, there has to be a renewed inquiry. So the question for the government is, what was it? What was the renewed inquiry? The government is conceding now that it's an explicit revocation case. They concede that it's a change of circumstance, which is not what the district court found, and it's not what the government argued at the district court level. So with that concession, the insurmountable hurdle here is, what is the renewed inquiry? There isn't one. McBride doesn't say a renewed Ferretta inquiry. It does not. It says a renewed inquiry. And, you know, there are, the Vann case, I believe that's the 10th Circuit, that talks about how that renewed inquiry could be something less than Ferretta. I don't have a dog in that fight, ultimately, of whether it's a full Ferretta hearing. I think best practice would be a full Ferretta hearing. But what is required is something, not nothing. Because they have nothing. There is nothing that they can point to that would be called a renewed inquiry. There's also no request for another lawyer from your client. He learns that his other lawyer, probably going to be disqualified. He doesn't make a request for a new lawyer. He says, we're ready. I mean, things just sort of continue on. I know you're saying there's some obligation on the court. Is there no obligation on the individual at all to say, I want another lawyer, or I want to reconsider, or? Well, I think in this context, what happened . . . Brad, you went for a year without a lawyer? Nine months. Nine months. Nine months without a lawyer before requesting to have CJA counsel, and then retaining counsel. He did a lot of stuff on his own during that nine-month period, did he not? Well . . . Some filings, and so on? Yes, there was an unlicensed lawyer writing filings in that file. That's a separate issue. We may get to that in a minute. But if you read the transcript, I don't know whether you want to argue the unequivocally point. I read it as he was . . . I mean, he knew it was coming up soon. He had been preparing for it, and he was pretty much hot to go. Says, oh, fine, I'll do it. He had had the first hearing, and he knew all those warnings, and he had been plugging ahead. Is there any indication that a second hearing, whether full-on or 90 percent or 50 percent, would have made any difference? I think it would have made a huge difference, because what the FREDA . . . It is about knowledge and teaching someone that it's a bad . . . But it's a warning. It is, don't do this. And it's about stopping an impulsive decision. I mean, that's what FREDA is really getting here, is when you have somebody who has a lawyer who's with them, who says, I want this lawyer if at all possible, and then says, okay, fine, I'll just represent myself. That is an impulsive decision. It was impulsive to get the lawyer. I mean, he went nine months without a lawyer, and then suddenly he wanted one. That was arguably impulsive as well. Well, I think it was more measured, because what . . . In any event, he doesn't . . . So there's no obligation, to go back to my earlier question, there's no obligation on behalf of the defendant to say, I'd like another lawyer, or can we talk about this, or . . . No, because the defendant is the one who's now triggered by the defendant's actions. He has triggered the district court to need to do the renewed inquiry. And it's these words, if I want to just represent myself, that is what triggers that. So something has to happen there. And ultimately, what the district court says is, I'm not involved in that. And that's just not what McBride says. I mean, McBride says there has to be some sort of inquiry that happens. And I do think that the equivocation . . . I mean, it's a related issue here, where we have . . . He's expressing confusion. This is a short phone hearing. He's got a trial in two weeks, with an eye surgery in between. And suddenly his lawyer's off the case two weeks before the trial, and he's like, okay, I'll represent myself, so that this trial can go forward. An actual slowdown here, let's go through the inquiry, the warnings again . . . The trial had been postponed a few times, right? It had been. Three or four times? It had been on track to go with the co-defendant until that severance had happened a few months before. So this is on the heels of an acquittal in the other trial, where we do suddenly have somebody saying, I'll just represent myself. Is it a correction, at least once it had been pretty close to set to go before he engaged the new lawyer, Statman? That I'm not familiar with. A time, because I know . . . I can look at the timeline, that's fine. There was a lot of discovery that came his way in that two weeks between, oh, I'll just represent myself, and suddenly being in trial. I guess the broader concern is a defendant abusing this process. So we have a former trial judge who may or may not have experienced this, but we do see these cases from time to time where a defendant starts trial, middle of trial, different points in time, raises the issue, and it arguably could be done for delay or other purposes. So requiring a full inquiry or a substantial inquiry every time this happens can really impede the trial process, and I recognize there's a lot of rights for the defendants, but it can really impede the trial process. So don't we afford some discretion to the district court to kind of size up the situation, and especially having done already one . . . the magistrate judge did the inquiry once before. I think that that could be what the law is, but it's not the law in the Sixth Circuit. It's not a totality of circumstances where we look. It is if there's an explicit revocation, there must be a renewed inquiry under McBride, binding case law, and there wasn't a renewed inquiry. Now, we can debate whether that is the proper law, but it is the Sixth Circuit law, and there's not a . . . And you're saying that from McBride and kind of the phrase explicit revocation is, is this the kind of explicit revocation that you usually think of, which, oh, wait a minute, I want a lawyer. I want a lawyer. He says, well, I got a lawyer. Is he a lawyer I can have? No, I don't want him. The wishy-washy defendant, the manipulative defendant . . . I'm not saying manipulative. I'm sort of saying in this case, is that what . . . I've looked up sort of the facts in McBride, and I thought that they were more of the sort where the guy really does say, you know, I'm not ready to go. I need a lawyer. Is that fair about McBride or not? I'm trying to remember the factual part. I mean, I can look at it, but that was my flavor of it, that McBride was not for the guy who's pretty much ready to go, but he gets a lawyer, and then he says, I can go instead. There is a kind of difference about that warning, and maybe that's the issue we have to decide is how strong is this, you've got to be warned at every stage. And I don't think it's at every stage. It's only after it's triggered by the explicit revocation, which in my mind is I want a lawyer, I've retained a lawyer. That is, as much as you can revoke it . . . That's what we can talk about, and we'll see what they have to say. So you're now in that boat. So I do understand that there are defendants that play games in this front, but I don't think we do have that evidence here that that's what's going on in this case. There's a genuine attempt to have a lawyer, I mean, in text messages that are cited in the motion for due trial on another issue, Dr. Fletcher clearly wants to have counsel, and he's being told, no, you have to go pro se, or no, you have to use this lawyer I have here. And it's not until this . . . I do think the timing . . . Well, I mean, but that's the point Judge Radler raised. He doesn't say, the judge doesn't say, you've got to go and do it yourself. He says, do you want to do it? And if the guy was really concerned, it would be, hey, maybe, you know, can I get a lawyer? Maybe I should get a lawyer. Talk to me about a lawyer. No, he's ready to go. This is where I do think that the impulsive nature of it all is so important, that FREDA is a situation where it's slow down, let's make sure this is what you want to do, whereas the district court in this case seemed to lean into the impulsivity and be like, okay, let's all be here in two weeks, when there really didn't seem to be much likelihood of a trial happening in two weeks, until Dr. Fletcher, exasperated by everything, saying that everything's insane, says, okay, I'll just represent myself. Do you think we apply abuse of discretion standard here? I think . . . no, I think it's de novo for the validity of the waiver. Well, it is for the original one. And then . . . It is for the original, the original FREDA inquiry, we would apply de novo, but that's already happened, and you have the intervening time of counsel, so this is later on in the  Is it, do you think it's the same, just go back to the same standard? Yes, I think it's back to validity of the waiver, de novo, and if the waiver's not valid, it's structural. You have to do all the steps then, sounds like you're saying. Not if you look at the Vann case, the Vann case looks at a similar situation, but then before the trial, the judge goes over with the defendant, I just want to make sure this is what you want to do. So there is, that is considered the renewed inquiry. It's hard because there's a pretty well set script, right, for what you have to do with the original FREDA inquiry, and we apply de novo review. But now we're saying, you're saying, well, you don't have to do everything, you have to do some things, it's not exactly what you have to do, but it's also de novo review. It's pretty hard for district judges in that setting if it's not abuse of discretion. I don't think it's that. I think you do the second FREDA, to be clear. Okay, that's even broader. I think you do the whole thing. I mean, ultimately, in a case where I've argued that a district court, in US v. Sealy, which is unpublished, but the thought of that case was, if another inquiry was required, it's likely to be a second FREDA. I'm just saying that I'm not, if this court were to find that a full second one is not necessary, it must find, under McBride, that something is necessary. And in Vann, what the court found was just going over everything again to make sure that this is exactly what the defendant wants to do is enough. But not just saying, okay, let's go, see you in two weeks. Any other questions? Okay, great. Thank you. We'll get your rebuttal, and we'll hear from the government. May it please the court. William Glasser for the United States. In FREDA, the Supreme Court said that in order to represent himself at trial, a defendant should, quote, be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing, and his choice is made with eyes open. Here, as Dr. Fletcher does not dispute, he was provided all of the necessary warnings at the magistrate judge's original FREDA hearing, so he was given everything that FREDA required him to have. The only question is whether, after he briefly retained Mr. Statman and indicated he would actually prefer to be represented by counsel, whether he knowingly and intelligently re-invoked his right to proceed pro se. The district court concluded, judging his demeanor in the telephonic conference, that he had actually explicitly re-invoked his right to proceed pro se. Telephonic conference and demeanor. Sure. Okay, so. I guess his voice. Sure. So, Your Honor, even if this court affords zero deference to the district court having been there in the telephonic conference, the record itself, the transcript of that hearing clearly shows he stated in multiple different ways that he wanted to represent himself. Is the governor's position that once you, once the inquiry happens, it never has to happen again in a full-scale sense? So Your Honor, I think it's really important to distinguish what we mean by inquiry because I think that Mr. Eckes and I have a sort of different understanding of it. So our view is that you don't need to go through all of the FREDA warnings as long as when a defendant seeks counsel, then re-invokes the right to proceed pro se, as long as the district court ensures that that's really what he wants to do. So he's already been warned. He's been told, you know, there's a lot of complicated procedures here. The magistrate judge warned him. His original counsel warned him. Trials are complicated. The hard facts for you is it seems like he changed his mind. He got those warnings and maybe he thought, gee, you know, you're right, I probably should get a lawyer. And it took nine months, but he did get a lawyer. So Your Honor. So I guess obviously it's the question here is what's the significance of that? Sure. And you keep calling it brief, which is true, but it did happen. Like, you did have a lawyer for some period, so it changed his mind. Right. And so we think that the district court had to conduct an inquiry, not the full FREDA warnings, but had to conduct an inquiry to ensure that he really did want to represent himself. Okay, let me stop you there. Is your position or a position that we could take that the court needs to be satisfied that it is knowing and intelligent given everything that has happened up to that point? That's exactly correct. That's exactly right. Now, your adversary here is making a great deal of the McBride case. In their original briefing, they cite it once right off. You never cite it and don't seem to attack that point. In their reply brief, they say the government argues that McBride was satisfied, although their reference, you don't ever cite McBride. They, I guess, perhaps giving you the benefit when you say the district court confirmed that Fletcher wanted to represent himself, they're crediting you with channeling McBride. What do you do with McBride? It is a case that you either have to flatly obey, as your adversary wishes, or you have to interpret. What's your view on that? Your Honor, I might be mistaken. I thought we did cite McBride for this. I immediately, as he began to hammer on it, I immediately looked at your table of contents and I didn't see it. Then they gave you the benefit on page 27 and I couldn't find it on page 27. That's right. I apologize. We cite Medina, which I think is the underlying case. You cite Medina in all those places. We don't dispute McBride certainly applies. Let me just walk through what McBride did. McBride considered two questions. First, McBride considered just a straight up Furetta inquiry and whether or not the defendant had knowingly and intelligently invoked after the hearing conducted there, I believe by a magistrate judge, similarly to here. Then the second part of McBride, the court considered whether or not there needed to be a separate waiver of counsel at sentencing. That starts on page 366 and into 367 of the decision to McBride. That's where this court says that unless there's been an explicit revocation or a change of circumstances you don't need to conduct that new inquiry at sentencing. McBride isn't exactly on point here because McBride wasn't actually dealing with an explicit revocation or a change of circumstances. It was just saying, look, nothing changed between trial and sentencing and so the district court is under no obligation to conduct that, any further inquiry. I think what is important about McBride is that McBride suggests that in those circumstances, when you have explicit revocation or change of circumstances, the district court needs to effectively re-ask the Furetta question, is this person knowingly and intelligently waiving his right to counsel? And that question is going to incorporate everything that's gone before. So if the defendant has previously received Furetta warnings, then of course the district court can, as it did here, refer back to those Furetta warnings, say, you've been warned. If the defendant, for some reason, had never been warned, let's say he was represented by counsel at trial, proceeds pro se at sentencing, then yes, the district court needs to conduct some additional inquiry. Judge Bunning did not refer back to the Furetta inquiry. He did, Your Honor. So this is on, let me find the right, this is on page ID 3560 of document 264. Judge Bunning says, the defendant has indicated he wants to proceed pro se, this is about two pages after the re-invocation. He's already gone through a lengthy Furetta hearing with Judge Smith, that's part of the case matter. I don't need to go through that again. And since he's not going to waive any potential conflict, I don't need to go through your white fact sheet. Well, he references it, but he doesn't do, he doesn't, I mean, he just, the transcript is the defendant saying, okay, I'm going to go forward, and he said, you can do that if you want. He says, yeah, I'm going to go forward. And he says, and then he says, well, there was a hearing previously. I mean, he did something, but it's about the least the district court could have done. Sure. So, Your Honor, I think. Well, there was a hearing previously, so we'll go forward. And maybe that's the government's rule that that's all you have to do, but it was not a, you could have done more. Oh, absolutely. I mean, he could have, he could have conducted a 30 minute Furetta. He could have done, yes, but he could have done something five minutes. Right. And Your Honor, I think what's important here when this court is determining whether or not there's been a valid Furetta waiver is whether or not the purposes of Furetta were served here, that the defendant was fully aware of the risks of proceeding pro se. And in conducting that inquiry, this court, like the district court, can consider the entire context.  You don't need to look with blinders on. I understand that. But he just, I mean, as long as you use the magic words, Furetta hearing, there was a prior Furetta hearing. So you can go forward. That's enough. Your Honor. No, I don't think that would be enough if. What more happened here? Well, so Your Honor, it wouldn't be enough if the defendant were equivocal in his, in his invocation. Right. But the district court knew that he had already been fully warned of all the risks of proceeding without counsel. He'd actually gone without counsel for nine months, knew what it was like to receive discovery from the government, knew what it was like to attempt to line up. He changed his mind. Right. And Your Honor. Either way. Right. Your Honor, in, in this hearing itself, he said he would prefer to be represented by Mr. Statman if that was possible, but if it's not possible, it's not possible. So he recognized it's, it's valuable to have counsel. That's, that's really what Ferretta requires. And when this conflict issue came up, he was apparently exasperated by the conflict issue. And that's where he explicitly re-invoked and he said it multiple ways. He said, I don't want or need a lawyer. Mr. Statman can go. It's not just, I don't, I don't, I can't have Statman. That would have been the point at which he could easily have said, I do want a different lawyer. Absolutely. Your Honor. And the district court, Judge Bunning had actually just previously to that said that you have, you have a right to retain your own counsel, but if you do so, you have a right to conflict free counsel. And Judge Bunning was trying to inquire, well, maybe you can waive the conflict here and have your preferred counsel, which is a perfectly appropriate thing to do. And then it was Dr. Fletcher that cut that inquiry short and said, I don't want or need a lawyer. Mr. Statman can go in his way. I'm not going to waive my right to this conflict. And I will be there a week from Monday for the trial to go forth and I'll represent myself pro se. There's really no way he could have said it more explicitly. And Judge Bunning said, okay, well, if you want to do that, Dr. Fletcher said, and I'm happy to do that. Judge Bunning says, that's your call. That's your call. I'm not involved in that other than to advise you of this potential issue. So that's an explicit invocation of the right to proceed without counsel. And the only question is whether this somehow, based on the context here, we can't conclude that Dr. Fletcher made that waiver knowingly and intelligently. And to do that, again, looking at everything, he'd already received a very thorough colloquy, all the Faretto warnings, which took him about half an hour of transcript with the magistrate judge. He'd been informed by his original counsel that it was a very risky thing to do to proceed pro se. He had prepared for trial. He'd almost gone to trial originally with his co-defendant. And then the trials were severed. So he, again, goes through this process of preparing for trial and re-invokes at this point. Now, again, you can look beyond that. He then goes to trial, at which he calls witnesses. He cross-examines witnesses. At no point during trial does he say, you know, Your Honor, on further thought, I actually would like standby counsel, even though I originally waived standby counsel. And the only time that he raises this Faretto claim... Had he done it there, I would think the inquiry would be even less from the district court if he'd gotten that far. Well, Your Honor, I think if it were a mid-trial request for standby counsel or a mid-trial request for counsel, then the district court would need to respond to that appropriately. And say, well, you had your Faretto warning before, and that's what the district judge did here, essentially. Well, yes, that's correct, Your Honor. But again, he was unequivocal in his invocation. How would you write the rule? What rule should we... Oh, sure. How would you sort of put this down in a workable rule that would be intelligible for future cases? So I think the rule... And it, of course, is going to be fact-specific, right? But I think the rule is that when a defendant re-invokes the right to proceed to trial pro se, the district court needs to ensure, once again, that that waiver is knowing and intelligent as required by Faretto. So is it your... The thing that I... I'm sitting here looking pensive because we're all talking about McBride and talking about the fact that McBride did say that you've got to make some inquiry. And then when Judge Radler asked you about what's the inquiry here, there's really just a statement from the district court that, hey, you had this hearing with Magistrate Judge Jones in which she went through all of the Faretto inquiry. There's no question there, so to speak. So if... It sounds to me like what you're saying is that all that needs to happen is that the district court just needs to reference back to your prior inquiry and make no question or ask no question of the defendant. Your Honor, that's not quite right. I think the district court needs to ensure that it's an unequivocal and knowing invocation. And that can all be implicit or internal? Because, I mean, you get it. We're a reviewing court. We're looking to the cold record to say what evidence is there in the record that the district court satisfied itself that this was a knowing and voluntary waiver on Dr. Fletcher's part. And I hear you saying, well, just look at all of these things that happened. And, by the way, the judge also referenced this prior Faretto inquiry. What more is there? Your Honor, I don't think that it was even... It wasn't necessarily necessary for the district court to reference the prior Faretto hearing. I think what was really important is for the district court to be confident that Dr. Fletcher had been thoroughly warned of the dangers of representing himself at trial, that he understood those dangers, and that knowing those things, he explicitly and unequivocally re-invoked. And all of those things are satisfied here. If I can, just going back to McBride, because I do think it's an important and useful case. McBride, this is on page... Let me make sure I get this right. I believe this is page 368 of McBride. Yes, 368. The court said that nothing occurred between trial and sentencing that would have prompted the district court to make a more thorough inquiry of McBride's wish to continue to represent himself. And I think the important rule from McBride is that when there's a change in circumstances, which we don't deny there was here, change of circumstances, explicit revocation, whatever, that there needs to be a sufficient inquiry that the defendant wishes to continue to represent himself. And, so that's... I guess that's one half of the inquiry, explicit invocation. And then the other half of the inquiry is adequately warned under Ferretta. I think that flows directly from Ferretta. And this court doesn't have to depart from McBride or lay down any new rule to simply say that in this case, it's clear that Dr. Fletcher was adequately warned. And it's clear that he explicitly invoked his right to proceed to trial, per se. So the clarity that the defendant used in articulating his desire to represent himself is the other part of that, is that... Absolutely, Your Honor. And I think, again, the entire context here, the only time, the only time at which Dr. Fletcher has raised any concern about the Ferretta inquiry is after he proceeds to a bench trial and he's convicted on three of the four counts. Then he raises it in a motion for new trial once he's obtained counsel. I don't think that the context of this case, where he's gone... He's proceeded, per se, for nine months. He has received all of the warnings. He then proceeds to trial after his indication. All of the context shows that he was fully aware of the dangers of representing himself and that he explicitly invoked the right to represent himself in the hearing. Do you think the standard here is abuse of discretion? Your Honor, this court has said that the Ferretta standard is de novo. Threshold, initial. Right. I think, so the high-level question of whether or not he was adequately warned and explicitly revoked on Ferretta, I think, is something the court reviews de novo. I do think it would be consistent with the law in other circumstances to say that factual findings of the district court are reviewed for clear error. And ordinarily, on a motion for new trial, you do review for abuse of discretion. So it's a little complicated, but I don't think that the standard review... We know it's a little complicated. I don't think the standard review really matters here because under any standard of review, he was fully warned and he explicitly re-invoked. So for these reasons, we'd ask the court to affirm. Thank you. Thank you, Your Honors. So in listening to the government, I think the wisdom of this court is coming to the surface here of what McBride has said. McBride made a pretty straightforward rule that there has to be an additional inquiry. That's what I've been arguing. The government is going through speculation about what he knew here, what he knew then, what the nine months mattered, whether or not he said something at trial. That type of speculation is difficult to capture, but it also points to why this court has said if there's an explicit revocation and you get back to square one where you are represented, we've got to renew the inquiry. The government has done... You have to do the FARETA inquiry. It's not some amorphous standard as you have to do enough to satisfy something. My argument is that you should do... The best practice would be to redo a FARETA hearing. Best practice is a little different from we will reverse if you don't. So if we're going to write it on the other side, what do we say? Do we say full FARETA inquiry or do you say something enough to do something? Because then the two of you seem to be kind of... If you took that position, you'd be kind of edging together. You have to do enough to do something and they say you did, you say you didn't. So what's your rule? My argument is that at a minimum, you must do something. And they say they did do something. You think not enough. I still haven't really understood what that something is. Talking about the prior FARETA hearings... I think perhaps one way to put it is that the nature of the unequivocalness is a proof of the knowing and intelligentness. That is that it's not just, oh, what the hell, I'll do it. I've done this. I know what I'm doing. I want to do it. I've got a couple of options and I've rejected those options. That's a little different from the archetype on your side, which is the guy says, well, I guess I've got to do it. I guess I will. Well, I do think it's an equivocal statement, but I don't think that's necessary to get to... So you're willing to say unequivocalness, they did it, they didn't do knowing and intelligent. Even if it was unequivocal, there still has to be... The unequivocal nature of the statement cannot serve as a renewed inquiry. That is torturing the words renew and inquiry both at the same time because you're not renewing anything. In an inquiry, it takes two to tango. Their idea of an inquiry seems to be, oh, I'm thinking about a prior Ferretta hearing that happened. That's not an inquiry. An inquiry is asking questions, warning the defendant. This is not a good idea. That's what the court calls on district courts to do when Ferretta is at play. Timing of the invocation or potential invocation matters. In other words, the closer you are to trial or in trial, the less the district court has to inquire because there's more likelihood for gamesmanship, the closer that you might be re-invoking the right to counsel or on the cusp of a trial or in the middle of trial. I share the court's concern about middle of trial issues. I think... This is a week before trial. This is two weeks before trial when he's represented by counsel. When the hearing started, he had counsel who should have been preparing for the trial. Now he's pro se. I don't think... I think the timing matters for the equivocation argument. I don't think it matters for the McBride argument. I also understand that if you're in the middle of trial, courts... I think it's part of the warning of there's not going to be take-backsies in the middle of trial. I do think that has happened. But when you said, and maybe that wasn't... I'm remembering the transcript. You said timing matters for revocation, but not for knowing and intelligent, but isn't the whole course of conduct have something to do with knowing and intelligent? That is, the fact that trial is looming is something that he certainly knows and he seems to be an intelligent fellow. And so, do you say timing has no effect on knowing and intelligent? Favorable or unfavorable, or only unfavorable? Well, I said timing is related to equivocation, not revocation. So the timing of it as it goes to knowing, I mean, I think if there was a vague test about whether it was knowing and voluntary, timing would matter. But there's not a vague test. There's a do an inquiry. Thank you very much. I appreciate both sides' arguments. The case will be submitted.